OPINION". Withey, Judge: Petitioner seeks to establish its qualification to reconstruct its base period income on all subparagraphs of section 722 (b) of the Internal Kevenue Code of 1939. We find it to be so qualified under subsection (b) (1). The litigation inaugurated by Noble in December 1937 had a depressant effect upon the income of petitioner for its fiscal year 1939 and to some extent for the remainder of that year as we have factually found. Its actual net profit for that period does not therefore provide an adequate basis with which to measure excessive profits of post-base-period years because such net profit would have exceeded the actuality provided the litigation had not been instituted. The suit for dissolution of petitioner was unique in its history and temporary in its effect as contrasted with the settlement of the suit which, though unique, was a permanent change so far as base period years are concerned. Since we have found qualification under subsection (b) (1) and since the facts relied upon for qualification under subsection (b) (2) are the same as those relied upon for qualification under the former subsection, we do not find it necessary to consider the (b) (2) issue. Southern California Edison Co., 19 T. C. 935. Petitioner fails to show any evidentiary basis for qualification under either subsection (b) (3) or (b) (5). In urging qualification under subsection (b) (4), petitioner points to two factors, the first of which is its change of operational situs from Wyoming to California and, secondly, to its increase in capacity arising-through acquisition of two additional drilling rigs in 1939. We are not convinced that either is a factor for such qualification. Petitioner’s drilling operations prior to its move to California wMle primarily confined to Wyoming Rad been consistently carried on to a substantial extent in other States contiguous thereto. The only real difference in its operation was that in California deeper drilling was regularly performed. This however is not a qualifying change because it is a difference only in degree not in character. It is noted too that petitioner in engaging in deep-well drilling in California was but furthering its long standing policy of performing such drilling even while operating in the Wyoming area. Petitioner’s acquisition of additional drilling rigs in 1939 is not shown to be a qualifying change in its character. Such acquisitions permitted, growth of its business but are not shown to have earned any increase. We have heretofore held that mere increased capacity without a showing that growth is attributable thereto is insufficient for (b) (4) qualification. Helms Bakeries, 23 T. C. 967; Green Spring Dairy, Inc., 18 T. C. 217. At no time during the base period after it obtained the new rigs and thus raised the total number thereof to 7 were more than 6 in use at the end of a month. The average number in use at the close of each month in 1939 was only about 4. We think it is a fair conclusion from the record that the partial dissolution of petitioner, coupled with the competition of Noble, is responsible for petitioner’s failure to capture sufficient business to utilize its increased capacity. As we have held above, these factors are permanent in nature and therefore not indicative of qualification. In our reconstruction of average base period net income, we must eliminate as a factor any fact or circumstance which would tend to alter from the normal the environment in which petitioner’s base period business was carried on. The factor which does so tend is the suit for liquidation with its attendant disruption of petitioner’s management, loss of confidence in petitioner’s ability to perform its drilling contracts on the part of potential owners of drilling rights, and the resulting decline in the number of such contracts. No attempted allocation of petitioner’s losses in number of wells drilled, total yearly footage, drilled, percentage of wells drilled in its operating area, or other such categories, is made on brief or otherwise by petitioner with respect to the abnormalcies claimed. We think it reasonable to conclude, however, that its base period experience during the years 1938 and 1939 was abnormal to an appreciable extent because of the institution and continuance for approximately 1 year of Noble’s suit for dissolution. That it adversely affected petitioner’s business operation for the remainder of the base period seems clear. After careful consideration of the record and the briefs of the parties, we hold that petitioner is entitled to use the amount of $68,000 as its constructive average base period net income. Reviewed by the Special Division. Decision will "be entered under Bule SO.